**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL NO. 26-cr-14 (JDB)** |
| | : | |
| | : | |
| **CHANG HOON LEE,** | : | |
| **also known as "Daniel Lee,"** | : | |
| | : | |
| **Defendants.** | : | |

# <u>GOVERNMENT'S MOTION FOR REVIEW AND APPEAL OF RELEASE ORDER</u>

The United States respectfully moves this Court to hear an appeal to review Magistrate Judge Stephanie S. Christensen's denial of the government's Motion for Pretrial Detention and issue an order detaining Chang Hoon LEE (the "Defendant") pending his initial appearance and arraignment in this District.

The Defendant is a member of a drug trafficking organization ("DTO") based out of Los Angeles, California that arranged for the sale of approximately 70 kilograms of methamphetamine and 55 grams of cocaine between October 2024 and January 28, 2026. He is charged in this District with an offense that carries a presumption that no condition or combination of conditions will sufficiently guarantee the Defendant's presence in court and protect the safety of the community. Further, at the time of arrest, the Defendant had two handguns in his residence—only one of which was registered to him—and two high-capacity 15-round magazines, which are generally illegal in the state of California. The Defendant faces significant jail time, including a mandatory minimum sentence of ten years and a guideline range that is considerably higher; has no ties to the District of Columbia; and has significant family ties in South Korea. Accordingly, the Defendant presents

a serious risk of flight and danger to the community that cannot be mitigated by any condition or combination of conditions and should be detained.

## BACKGROUND

On January 28, 2026, the Defendant and his co-defendant, Ernest Lin ("LIN"), were arrested in Los Angeles, California, on a warrant issued in this District in the above-captioned matter. The Defendant had an initial appearance before the Magistrate Court in the Central District of California on January 28, 2026, pursuant to Rule 5 of the Federal Criminal Rules of Procedure. At that time, the government moved to detain the Defendant pending his initial appearance and arraignment in the District of Columbia. The Honorable Stephanie S. Christensen, U.S. Magistrate Judge for the Central District of California ("CDCA"), held a detention hearing and denied the government's motion for pretrial detention and ordered the Defendant's release on the following conditions of release: a $10,000 appearance bond, submit to United States Probation and Pretrial Services supervision; surrender all passports and travel documents by January 20, 2026 [two days after the court expected to release the Defendant]; travel only within CDCA and the District of Columbia; do not relocate without prior permission from the supervising agency; maintain employment; avoid all contact with any known codefendants; do not use or possess illegal drugs and submit to drug testing; and submit to a search of his person and property by the supervising agency. On an oral motion by the government, Judge Christensen stayed the order of release until January 30, 2026.

On January 23, 2026, a federal grand jury sitting in the District of Columbia returned an indictment against the Defendant, charging the Defendant with conspiracy to distribute and possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine and a mixture and substance containing a detectable amount of

cocaine, both Schedule II narcotic drug controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii), (b)(1)(C), and 846. This offense carries a presumption that no condition or combination of conditions will sufficiently guarantee the Defendant's presence in court and protect the safety of the community.

The Indictment in this case is the product of an extensive, long-term investigation conducted by agents from the Federal Bureau of Investigation ("FBI"). The Government anticipates that the evidence at trial will show that the Defendant was part of a complex narcotics conspiracy from at least October 2024 until his arrest on January 28, 2026. The ultimate objective of the conspiracy was to distribute kilograms of methamphetamine to the District of Columbia and elsewhere throughout the United States.

On January 28, 2026, when law enforcement searched the Defendant's residence, which he shares with a girlfriend, pursuant to a search warrant issued in CDCA, they seized: a loaded Glock 19 pistol, which was registered to the Defendant; a Canik pistol, which was not registered; two 15-round magazines; approximately $15,000 in cash; and drug paraphernalia, including pills, baggies, a scale, and a spoon—all covered in a white powdery substance. The Glock was found in a TV stand, and the Canik and drug paraphernalia were found in a safe. *See* photos below. Notably, the Defendant told U.S. Probation and Pretrial Services in CDCA that he had only $3,000 to $4,000 in cash at his apartment, and that he had a 9mm handgun, which was registered to him. He did not mention the second handgun or the high-capacity magazines.





If this case proceeds to trial, the Government's evidence at trial is expected to consist of:

- Recorded communications between co-defendant LIN and an FBI undercover ("UC") arranging for the shipment of approximately 20 kilograms of methamphetamine to a P.O. Box in the District of Columbia and for two in-person deliveries to the UC in Los Angeles, California, totaling approximately 50 kilograms.
- Surveillance of LIN meeting with the Defendant and then immediately mailing packages to D.C. that contained methamphetamine. The methamphetamine received in D.C. was packaged in a grey plastic bag consistent in appearance with the bag that surveillance observed the Defendant hand LIN.
- Surveillance of the Defendant handing packages to LIN the day of the first in-person controlled buy, which were consistent with the packages handed to the UC by LIN. The contents of the packages were later confirmed by laboratory testing to contain methamphetamine and cocaine.
- Toll records and cell site location information for the Defendant, and physical evidence stemming from the seizures of approximately 50 kilograms of methamphetamine and 55 grams of cocaine.

The Defendant has resided in California since 2003, according to the Pretrial Services Report prepared by U.S. Probation and Pretrial Services in CDCA. He is a naturalized U.S. citizen and immigrated from South Korea. His parents and the rest of his family, with the exception of one brother, live in South Korea, and he travels there. The Defendant is not married, he has no children, and he owns no property in the United States, with the exception of one vehicle. The Government is not aware of any contacts the Defendant maintains in the District of Columbia.

# ARGUMENT

## Standard of Review

The Bail Reform Act does not set out a standard of review to be applied by the District Court in reviewing the denial of a Motion for Pretrial Detention by a Magistrate Judge. However, the District Court has "broad discretion" in its review of decisions under the Bail Reform Act. *United States v. Munchel,* 991 F.3d 1273, 1280 n. 3 (D.C. Cir. 2021). "Evaluating the competing considerations is a task for the commissioner or judge in the first instance, and then the judges of the District Court (where they have original jurisdiction over the offense) have a broad discretion to amend the conditions imposed, or to grant release outright, if they feel that the balance has been improperly struck." *Id*. (quoting *Wood v. United States*, 391 F.2d 981, 984 (D.C. Cir. 1968).

Furthermore, every circuit that has considered the question has held that a district court can review a magistrate judge's release or detention order *de novo*. *United States v. Chrestman*, No. 21-mj-218, 2021 WL 765662 at *5 n. 5 (D.D.C., Feb. 6, 2021) (collecting Court of Appeals' decisions "uniformly endorsing a *de novo* standard of review"). This conclusion is supported by the statutory language of both the Bail Reform Act and the Federal Magistrates Act. *Id*. at *6 ("In short, both the BRA and the Federal Magistrates Act lead to the conclusion that a district court reviews a magistrate judge's pretrial release or detention order *de novo*. Unsurprisingly, this view is shared by every circuit court to have addressed the standard of review under § 3145 … and by the Local Rules of this Court, *see* Local Crim. R. 59.3(b)").

## The Bail Reform Act

Under the Bail Reform Act, 18 U.S.C. §§ 3141 *et seq.*, federal courts must order a defendant's pre-trial detention upon determining that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person

and the community." 18 U.S.C. § 3142(e). A finding of dangerousness must be supported by clear and convincing evidence.18 U.S.C. § 3142(f); *see United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987). A finding of risk of flight must be supported by a preponderance of the evidence. *Simpkins*, 826 F.2d at 96. If the Court finds that no conditions will reasonably assure both the appearance of the defendant and the safety of any other person and the community, he or she shall order the defendant detained. 18 U.S.C. § 3142(e)(1). Thus, detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both.

The Bail Reform Act lists the following four factors as relevant to the determination of whether detention is appropriate: (1) the nature and circumstances of the crimes charged, (2) the history and characteristics of the defendant, (3) the seriousness of the danger posed by the defendant's release, and (4) the evidence of the defendant's guilt. *See* 18 U.S.C. § 3142(g).

**Statutory Presumption of Dangerousness and Risk of Flight**

Under 18 U.S.C. § 3142(e)(3)(A), there is a rebuttable presumption that no conditions will assure as to both flight risk and danger if the defendant is charged with a Controlled Substances Act offense with a statutory maximum of 10 years or more. In this case, the Defendant is charged with an offense for which the maximum term of imprisonment is life as prescribed by the Controlled Substance Act. As the penalty of life imprisonment is more than 10 years, the presumptions of Section 3142(e) apply here.

An indictment charging a qualifying offense, as is the case here, is sufficient to trigger this rebuttable presumption. *United States v. Smith*, 79 F.3d 1208 (D.C. Cir. 1996); *United States v. Mosuro*, 648 F. Supp. 316, 318 (D.D.C. 1986). When the presumption is triggered, it operates "at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir.

1985). However, the presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption remains as an evidentiary finding militating against release and to be weighed along with all the evidence relating to the factors listed in Section 3142(g). *See United States v. Cherry*, 221 F. Supp. 3d 26, 32 (D.D.C. 2016) (citing *United States v. Ali*, 793 F. Supp. 2d 386, 391 (D.D.C. 2011) and *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986)). In other words, "it does not follow that the effect of the presumption disappears as soon as the defendant produced some contrary evidence. Congress framed the flight presumption in light of its general finding, based on extensive testimony, that flight to avoid prosecution is particularly high among those charged with major drug offenses." *United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir. 1985); *see also Cherry*, 221 F. Supp. 3d at 32; *Ali*, 793 F. Supp. 2d at 391. For all of the reasons addressed below, the Defendant will be unable to satisfy his burden to rebut the presumption that no condition or combination of conditions will reasonably assure the appearance of the Defendant and the safety of the community.

**Nature and Circumstances of the Offenses Charged**

The nature and circumstances of the offense charged establish that the Defendant is a risk of flight and a danger to the community. The conditions imposed by the Magistrate Judge are insufficient to assure his appearance in this District or the safety of the community, nor are there any conditions or combination of conditions that would do so. The conditions imposed create no meaningful restrictions on the Defendant's ability or incentive to flee or his ability to continue to traffic drugs and are all entirely dependent on the presumption that the Defendant will comply with the law now that he has been arrested—which is particularly hard to credit given that in his first interview with Probation, he withheld information about the guns and cash in his home.

The possibility of a severe sentence is also an important factor in assessing a defendant's incentive to flee. *See United States v. Hong Vo*, 978 F. Supp. 2d 41, 43 (D.D.C. 2013) (holding the nature and circumstances of the offenses charged against defendant strongly favor detention because of the substantial incentive to flee the United States); *United States v. Anderson*, 384 F.Supp.2d 32, 36 (D.D.C. 2005) (holding the gravity of the offenses and the potential prison term create a considerable incentive for the defendant to avoid prosecution and the likelihood of imprisonment in the event of a conviction); *see also Ali*, 793 F. Supp. 2d at 392. As addressed above, the Defendant faces a mandatory minimum sentence of 10 years if convicted on the counts charged in the Indictment, and the U.S. Sentencing Guidelines range for the charged offense would be even higher—235 to 293 months imprisonment for the Defendant if he went to trial based on the amount of methamphetamine seized. *See* 21 U.S.C. § U.S.S.G. § 2D1.1(c). Even if the Defendant were to plea to the Indictment, receive credit for acceptance of responsibility, and agree to a Safety Valve proffer, he would be facing 135 to 168 months imprisonment. And, in light of the strength of the evidence, this factor is a significant one in this case.

Federal courts have repeatedly recognized that "[f]light to avoid prosecution is particularly high among persons charged with major drug offenses," because "drug traffickers often have established ties outside the United States . . . [and] have both the resources and foreign contacts to escape to other countries." *See, e.g., Alatishe*, 768 F.2d at 370 n.13 (citing S. Rep. No. 98-225 at 20 (1983), reprinted in 1984 U.S.C C.A.N. 1, 23). This is nowhere more evident than in the type of organized crime in which the Defendant has engaged. Organized drug conspiracies often span multiple countries and have the potential to generate millions of dollars in gross proceeds from the sale of potent controlled substances. Indeed, "Congress made 'risk of flight' a ground for detention because it believed that there were major drug dealers to whom the posting and losing of even

large amounts of money bond were not a deterrent, but a mere cost of doing business." *United States v. Battle*, 59 F.Supp.2d 17, 19 (D.D.C. 1999).

**History and Characteristics of the Defendant**

The Defendant has a limited criminal history—he was convicted of driving under the influence in 2013 and 2017. However, the Defendant has no contacts in the District of Columbia, and he has direct ties to and regular contact with numerous close relatives in South Korea. According to the Pretrial Services Report, he travels to South Korea and has a passport—which he will have two days to turn in after he is released. While the Defendant is a naturalized U.S. citizen and has lived in the United States since 2003, he does not own property in the United States—with the exception of a vehicle, which was seized by law enforcement in connection with this case. He has a girlfriend that he has been dating for a year and a half and no children, according to the Pretrial Services Report.

The Defendant also reported to Probation that he had a part-time job as a sushi chef at a restaurant with locations in Redlands and Rancho Cucamonga, California, and a full-time job at a hydroponic retail store in Walnut, California. However, cell site location information for the Defendant's phone from October 1, 2025 to January 28, 2026, which was obtained via search warrants in this District, shows that the Defendant's phone has not pinged in the vicinity of either of the sushi restaurants or the hydroponic store. Additionally, an analysis of the Defendant's financial records shows that he does not appear to be receiving pay checks from either job, although there are cash deposits in the account at irregular intervals.

Given the severity of the sentence that the Defendant is facing and his strong familial ties outside the country, the Defendant has the motive and opportunity to flee the country and not appear in the District of Columbia. *See Hong Vo*, 978 F. Supp. 2d at 43 (finding detention

warranted because not only was defendant indicted on serious charges carrying a severe punishment potential, but defendant had ability to flee the United States); *Anderson*, 384 F. Supp. 2d at 36 (finding detention warranted because not only did the defendant have the ability to flee D.C. and the United States, but also had the ability to live comfortably in foreign jurisdiction and evade capture due to his substantial assets abroad). There is no condition or combination of conditions that would assure the Defendant's appearance in the District of Columbia to face the Indictment against him. *See* 18 U.S.C. § 3142(e)(1).

**<u>Safety of the Community</u>**

A determination of dangerousness to the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). Federal courts have recognized that drug traffickers are likely to continue engaging in drug related activities if released on bail and thus constitute a danger to the community. *See, e.g., Alatishe*, 768 F.2d at 370 n.13 (citing S. Rep. No. 98-225 at 20 (1983), reprinted in 1984 U.S.C C.A.N. 1, 23); *accord United States v. Creekmore*, 1997 W.L. 732435 (D.D.C. 1997). The Defendant conspired to ship numerous kilograms of methamphetamine, which is not just dangerous, but also deadly. According to the Centers for Disease Control (CDC), among the 309,274 overdose deaths during January 2021–June 2024 in 49 states and DC, 31.2 percent involved methamphetamine.[1] While 68.8 percent of the methamphetamine-involved overdose deaths co-involved opioids, the remaining 31.2 percent did not.[2]

[1] *See Morbidity and Mortality Weekly Report*, "Drug Overdose Deaths Involving Stimulants — United States, January 2018–June 2024," Aug. 28, 2025, https://www.cdc.gov/mmwr/volumes/74/wr/mm7432a1.htm#:~:text=SUDORS:%20Stimulant%2DInvolved%20Overdose%20Deaths,stimulants%20and%20opioids%20(44.2%25).

[2] *Id.*

Importantly, the Defendant was not involved in distributing personal-use quantities of methamphetamine. He was distributing wholesale quantities for redistribution. Based on the evidence in this case, there is a real danger that the Defendant will return to drug dealing if released. Additionally, the Defendant possessed two handguns—only one of which was registered to him—and two 15-round, high-capacity magazines. Accordingly, there is no condition or combination of conditions that would assure the safety of the community. *See* 18 U.S.C. § 3142(e)(1).

**Weight of the Evidence**

Where the evidence of guilt is strong, it provides a considerable additional incentive to flee. *See United States v. Medina*, 255 F. Supp. 2d 3, 4 (D.D.C. 2006) (finding detention warranted because government's evidence was strong against the defendant); *see also United States v. Vergara*, 612 F. Supp. 2d 36, 37 (D.D.C. 2009). The evidence against the Defendant is overwhelming. The evidence includes the recorded communications described above, surveillance of the Defendant that shows he provided methamphetamine and cocaine to his co-defendant, and physical evidence stemming from the seizure of approximately 50 kilograms of methamphetamine and 55 grams of cocaine.

/

/

/

/

/

/

/

/

## CONCLUSION

For the foregoing reasons, the government respectfully requests this Court to detain the Defendant pending trial. An analysis of the factors laid out in 18 U.S.C. § 3142(g) establishes (a) by clear and convincing evidence that there are no conditions or combination of conditions that reasonably assure the safety of the community and (b) by a preponderance of the evidence that that there are no conditions or combination of conditions that reasonably assures the appearance of the Defendant in court. *See* 18 U.S.C. § 3142(e)(1), (f)(2). Accordingly, the Court should detain the Defendant pending trial.

Respectfully submitted this 29th day of January 2026.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

*/s/ Kate M. Naseef*
KATE M. NASEEF
Assistant United States Attorney
VA Bar Number 87850
Violent Crime and Narcotics Trafficking Section
601 D Street, N.W.
Washington, D.C. 20530
Office: 202-809-2057
Kate.Naseef2@usdoj.gov