**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **No. 26-CR-14-02 (JDB)** |
| | ) | |
| **CHANG HOON LEE** | ) | |
| | ) | |

**DEFENDANT'S OPPOSITION TO GOVERNMENT'S APPEAL OF ORDER GRANTING PRETRIAL RELEASE**

Defendant Chang Hoon Lee, through the undersigned attorney, respectfully requests that this Court deny the Government's motion to appeal the Magistrate Judge's Order releasing Mr. Lee on bond pursuant to the Bail Reform Act, 18 U.S.C. § 3142 and *United States v. Salerno*, 481 U.S. 739 (1987). Magistrate Judge Christensen in the Central District of California properly considered the arguments raised by the government and found that the release was appropriate because the government did not prove either by a preponderance of the evidence that Mr. Lee was a risk of flight or by clear and convincing evidence that Mr. Lee was a danger to the community. The Court properly found that Mr. Lee rebutted the presumption of detention with evidence of (1) his significant connections to the community in which he lives, (2) his limited criminal history, and (3) the presence and willingness of his employer to put up a $10,000 appearance bond. The Court set reasonable conditions of release designed to ensure Mr. Lee's appearance, including requiring him to submit to supervision as directed, surrender his passport and not obtain another passport, not use or possess illegal drugs and submit to drug testing, avoid contact with his co-defendant, maintain employment, and participate in location monitoring. The government has provided no reasons to reverse the reasoned decision by the Magistrate Judge. Therefore, Mr. Lee asks the Court to deny the government's appeal and find that there

are conditions that will reasonably ensure his appearance and ensure the safety of the community and to release him under those conditions.

## I. Background

On January 23, 2026, an Indictment was filed under seal charging Mr. Lee and one co-defendant with one count of conspiracy to distribute a controlled substance under 21 U.S.C. § 846, 841(b)(1)(A) and (b)(1)(C). On January 28, 2026, Mr. Lee was arrested and appeared before a Magistrate Judge in the Central District of California for a return on arrest warrant and Rule 5 hearing. The Magistrate Judge heard arguments about whether Mr. Lee should be released or detained pending trial, denied the government's motion to detain, and granted Mr. Lee's motion for release. *See* Ex. A, Notes of Proceeding. Mr. Lee did not resist arrest and at the same time, agents searched Mr. Lee's apartment. The government moved to stay the decision releasing Mr. Lee and appealed to this Court. The government argues both that Mr. Lee is a serious risk of flight and presents a danger to the community.

## II. Legal Standard

Consistent with the presumption of innocence and the Eighth Amendment prohibition against excessive bail, the Bail Reform Act of 1984 provides that a defendant should be released pending trial on personal recognizance or "subject to the *least restrictive* further conditions, or combination of conditions that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(b) and (c)(1)(B) (emphasis added). The Supreme Court has explained: "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987); *see also United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) ("Detention until trial is relatively difficult to impose."). "Nothing in this section shall be construed as modifying or limiting the presumption of innocence." 18 U.S.C.

§ 3142(j). As a general rule, courts should refuse to release defendants on bail "[o]nly in rare circumstances," and "only for the strongest of reasons." *United States v. Motamedi*, 767 F.2d 1403, 1405, 1406 (9th Cir. 1985) (Kennedy, J.). "It is only a 'limited group of offenders' who should be [detained] pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (quoting S. Rep. N. 98-225 at 7 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3189). Any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Motamedi*, 767 F.2d at 1405.

Under 18 U.S.C. § 3142(e)(3)(A) a rebuttable presumption exists that no condition or combination of conditions will reasonably assure the appearance of the person and the safety of the community where a defendant is charged with a controlled substances offense with a maximum term of imprisonment of 10 years or more. The Indictment charges Mr. Lee with a controlled substances offense that carries a statutory maximum sentence of life imprisonment and qualifies for the rebuttable presumption. Where the presumption applies, the Bail Reform Act imposes a "burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alitishe*, 768 F.2d 364, 371 (D.C. Cir. 1985). Such a burden is "not heavy" and only requires the production of "some evidence." *United States v. Bustamante-Conchas*, 557 Fed. Appx. 803, 806 (10th Cir. 2014).

Even in cases where a rebuttable presumption applies, it is ultimately the government's burden to demonstrate either by a preponderance of the evidence that the defendant is more likely than not to flee, or by clear and convincing evidence that preventative detention is necessary to ensure the safety of the community. *See United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985) (Breyer, J.). Under the Bail Reform Act, the Court must consider the following factors when determining whether the government has presented sufficient evidence that Mr. Lee

be detained: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the history and characteristics of the person charged; and (4) the nature and seriousness of the danger posed by the person to any person in the community if he is released. 18 U.S.C. § 3142(g).

In addition to the legal standard, this Honorable Court should be aware that the Judicial Conference's Committee on Criminal Law has recommended changes to § 3142(e)'s presumption in drug cases, in part due to the dramatic increase of detention for low-risk defendants.[1] In 2017, the Judicial Conference's Committee on Criminal Law concluded "that the § 3142(e) presumption was unnecessarily increasing detention rates of low-risk defendants, particularly in drug trafficking cases."[2] To alleviate this dilemma, the Judicial Conference proposed significant legislative reform that would amend the presumption of detention in drug cases "to limit its application to defendants described therein *whose criminal history suggests* that they are at a higher risk of failing to appear or posing a danger to the community or another person."[3] While the Judicial Conference's proposed legislation has not been enacted yet, this Court can certainly take it into account when evaluating the presumption of detention in this case. Notably, the Conference's position underscores Congress's intent with the Bail Reform

---

[1] The disparities in detention and extremely high rates of detention were also recently studied by The University of Chicago Law School Federal Criminal Justice Clinic. The study finds that the presumption of detention is often given too much weight and "since people of color face criminal charges triggering the presumption more often than white arrestees, the misapplication of the presumption exacerbates racial disparities in the federal criminal system." Alison Siegler, *Freedom Denied: How the Culture of Detention Created a Federal Jailing Crisis*, Executive Summary at 26 (October 2022), available at https://freedomdenied.law.uchicago.edu/summary. The full report is also available here: https://freedomdenied.law.uchicago.edu/report.

[2] *Report of the Proceedings of the Judicial Conference of the United States* 10 (Sept.12, 2017), archived at https://perma.cc/B7RG-5J78.

[3] *Id*. (emphasis added).

Act – to limit pretrial detention for only "*a small but identifiable group of particularly dangerous [persons]* as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons." S. Rep. No. 225, 98th Cong., 1st Sess. 6-7, reprinted in U.S. Code Cong. & Ad. News 3189 (emphasis added).

Finally, as relevant here, pursuant to the Bail Reform Act, if the government moves for detention alleging that there is a "serious risk" that the person will flee and the Court finds as such, a judicial officer may then determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community. *See* 18 U.S.C. § 3142(f)(2)(A). "A determination that an individual is a serious risk of flight must be supported by a preponderance of the evidence." *United States v. Vasquez-Benitez*, 919 F.3d 546, 551 (D.C. Cir. 2019) (citing *United States v. Vortis*, 785 F.2d 327, 328-29 (D.C. Cir. 1986) (per curiam)).

**III. Mr. Lee Has Rebutted the Presumption of Detention with Credible Evidence.**

Mr. Lee successfully rebutted the presumption of detention before the Magistrate Judge by provides "some credible evidence" that there are conditions, which would reasonably assure his appearance and the safety of the community. First, Mr. Lee has strong ties to his community in Los Angeles, California.[4] Mr. Lee came to the United States in 2003, when he was only ten

---

[4] The government argues that Mr. Lee has no ties to Washington, D.C., but that is irrelevant. Mr. Lee would be released in Los Angeles and reporting to Pretrial Services in Los Angeles. The question of community ties is about reasons to support a finding that Mr. Lee would remain in his home and remain available to come to Court. If the question was about ties to the place where the case is filed, then most of the January 6 defendants would not have been released and many other defendants charged in Washington, D.C. who never set foot in our city would never be released. That is not the relevant question. In fact, counsel currently has one other client released pretrial and living in Los Angeles, and has previously had clients around the country on pretrial release, regardless of their connections to Washington, D.C.

years old. He was raised in the Los Angeles area by this aunt and uncle, who still live there. He has close friends and family all throughout the Los Angeles area. Counsel spoke with Mr. Daniel Kim, who has known Mr. Lee since Mr. Lee was in high school. Mr. Kim employed Mr. Lee as a sushi chef in one of his restaurants until it closed in 2023 or 2024. Mr. Kim reported that Mr. Lee never even called in sick for a single shift. He was a reliable worker and continues to help cover shifts on Mr. Kim's other restaurants on an as needed basis when other chefs call in sick.[5] Mr. Kim is a wonderful source of support for Mr. Lee and even put up a $10,000 appearance bond.[6]

Mr. Lee currently lives with his girlfriend in an apartment they share. Counsel spoke with Mr. Lee's girlfriend, who expressed concern about how she would pay the rent without Mr. Lee and, knowing the pending charges, would welcome Mr. Lee back to the home they share. She is currently caring for Mr. Lee's dog and stated that she would ensure Mr. Lee shows up for Court and would help him financially to get back and forth to D.C. as needed. The government argues that Mr. Lee's family is in South Korea, but his aunt and uncle, who raised him are in the Los Angeles area, and his brother lives in Arizona. His father, who he is estranged from, and his mother live in South Korea. He travels there once a year to visit. His family and his connections are in the United States. Mr. Lee is a United States citizen. He built his life in the U.S. and intends to stay here.

[5] Mr. Kim noted to counsel that Mr. Lee is welcome to a full-time position at one of his restaurants, but they are all between 1.5 and 2 hours driving away from where Mr. Lee currently lives. Mr. Kim also owns a construction company and is more than willing to find a position for Mr. Lee there, if necessary, should Mr. Lee be released pretrial.

[6] Counsel is aware that this Court does not typically require appearance bonds, even when they are applied in other jurisdictions, but wanted to also note that Mr. Kim indicated he would be willing to put up more money, if the Court needed it. He expressed his confidence that Mr. Lee would appear in Court as ordered and would abide by his pretrial conditions of release.

Mr. Lee also has a very minor criminal record. He has two prior misdemeanor convictions for driving under the influence (from 2013 and 2017) and zero history of violence. Mr. Lee was not on court supervision during the time of the alleged offense in this case. There is no history of failure to abide by court conditions of release or probation conditions noted in the Pretrial Services report provided by the Central District of California. No part of Mr. Lee's background or criminal history indicates that he is a flight risk or a danger to the community.

Third, the government's actions in this case refute their argument that Mr. Lee is a danger to the community and should be detained. The indictment alleges a conspiracy from October 2024 to the present. While the indictment provides no details, the brief facts provided in the government's appeal indicates that the government through confidential sources and undercover officers engaged in purchases from Mr. Lee's co-defendant, presumably during the alleged conspiracy period because no dates are provided. If the government genuinely believed that Mr. Lee's actions were so dangerous as to warrant detention pending trial, then they would not have engaged in repeated undercover purchases and waited to indict Mr. Lee. The government's argument is untenable—it cannot both be the case that the government is concerned that Mr. Lee is a danger to the community if released and that also have waited over a year to halt the alleged distribution.

The foregoing facts rebut the presumption of detention in this case.

## IV. In This Case, the Government Has Also Not Met Its Burden of Proving That Mr. Lee Poses a "*Serious*" Risk Of Flight Under § 3142(f)(2)(A).

Mr. Lee should be released on conditions because there is not a "serious risk that [he] will flee" the jurisdiction under § 3142(f)(2)(A). Ordinary "risk of flight" is not a factor in § 3142(f). There is some risk of flight in every criminal case; "serious risk" of flight means something more.

According to a basic canon of statutory interpretation, the term "*serious* risk" means that the risk must be more significant or extreme than an ordinary risk. *See, e.g.*, *Corley v. United States*, 556 U.S. 303, 314 (2009); *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687, 698 (1995) (noting interpretation of statute should be reluctant to treat statutory terms as surplusage). Indeed, Congress has prescribed "serious risk of flight" and the risk of non-appearance as separate requirements. *United States v. White*, No. 3:21-MJ-04070, 2021 WL 2155441, at *8 (M.D. Tenn. May 27, 2021) (citing *Gibson*, 384 F. Supp. 3d at 965) ("Congress settled on very different language when describing the analysis courts must undertake once a detention hearing goes forward."). A risk of flight suggests an intentional and active effort to put oneself outside of the purview of the court, whereas non-appearance can cover negligent and other non-intentional circumstances. *Id.* Further, if a case does not involve a "serious risk" of flight then the government's request for detention fails at step one. *Id.* "The ordinary meaning of 'flee' [under (f)(2)(A)] suggests volitional conduct." *United States v. Ailon-Ailon*, 875 F,3d 1334, 1338 (10th Cir. 2017).

The Bail Reform Act's legislative history also makes clear that detention based on serious risk of flight is only appropriate under "extreme and unusual circumstances."[7] For example, the case relied on in the legislative history as extreme and unusual enough to justify

[7] *See Bail Reform Act of 1983: Rep. of the Comm. on the Judiciary*, 98th Cong. 48 (1983) ("Under subsection f(2), a pretrial Detention Hearing may be held upon motion of the attorney for the government or upon the judicial officer's own motion in three types of cases. . . . [T]hose [types] involving . . . a serious risk that the defendant will flee . . . *reflect the scope of current case law that recognizes the appropriateness of denial of release in such cases*.") (emphasis added) (citing *United States v. Abrahams*, 575 F.2d 3, 8 (1st Cir. 1978)—which held that only a "*rare case of extreme and unusual circumstances* . . . justifies pretrial detention"—as representing the "current case law"); *see also Gavino v. McMahon*, 499 F.2d 1191, 1995 (2d Cir. 1974) (holding that in a noncapital case the defendant is guaranteed the right to pretrial release except in "extreme and unusual circumstances"); *United States v. Kirk*, 534 F.2d 1262, 1281 (8th Cir. 1976) (holding that bail can only be denied "in the exceptional case").

detention on the grounds of serious risk of flight involved a defendant who was a fugitive and serial impersonator who had failed to appear in the past, and had recently transferred over a million dollars to Bermuda. *See United States v. Abrahams*, 575 F.2d 3, 4 (1st Cir. 1978). The government must demonstrate that the risk of flight in a particular case rises to the level of extreme or unusual, and no such showing has been made here.

The government has not demonstrated that Mr. Lee is a serious risk of flight or set forth any facts sufficient to find the risk of flight is extreme or unusual. In this case, the government contends that Mr. Lee was born in Korea, has family in Korea who he sometimes visits, does not own property in the U.S.,[8] and Mr. Lee's charge has a mandatory minimum sentence with the potential for high applicable sentencing guidelines if convicted. Emigrating to the United States, having family in another country, and facing a mandatory minimum sentence does not make Mr. Lee's likelihood of flight unique or unusual. The government provides zero evidence that Mr. Lee has access to funds to flee. Mr. Lee has lived in the Los Angeles area since he was ten years old. The family that raised him is there. His life is there. Additionally, Mr. Lee was ordered to turn in his passport and not seek out another passport or travel document. The government can also put Mr. Lee on the no fly list, as they did with many defendants charged after the events of January 6, 2021. Simply stated, being born outside the United States, traveling internationally in the past, and facing a potential mandatory minimum sentence is not sufficient to constitute a "serious risk of flight" for the purposes of 18 U.S.C. § 3141(f)(2).

---

[8] Counsel will note the decreasing rate of property ownership in people Mr. Lee's age. *See* Census Data, https://www.census.gov/housing/hvs/data/charts/fig07.pdf

The government's cited cases about the severity of the sentence justifying detention are distinguishable. In *United States v. Hong Vo*, 978 F. Supp. 2d 41 (D.D.C. 2013), this Court detained Ms. Vo, but in addition to the potential sentence found the Ms. Vo had "access to substantial assets overseas, combined with her experience living in Vietnam for the past two years, her language skills, and her contacts in Vietnam—a country that maintains no extradition treaty with the United States—all demonstrate her ability not only to flee the United States but also to live comfortably and evade capture in foreign jurisdictions." *Id*. at 45 (internal quotation marks omitted) (citing *United States v. Anderson,* 384 F. Supp. 2d 32, 36 (D.D.C.2005)). Mr. Lee does not have similar means and connections. Additionally, the United States has an extradition treaty with the Republic of Korea. Text - Treaty Document 106-2 - EXTRADITION TREATY WITH THE REPUBLIC OF KOREA | Congress.gov | Library of Congress. Similarly, in *United States v. Anderson*, 384 F. Supp. 2d 32 (D.D.C. 2005), the district judge found that Mr. Anderson had a "unique ability to flee the jurisdiction and evade detection by the United States government by virtue of his substantial assets abroad, his connections overseas, and his use of aliases and false identities." *Id*. at 36. No such "unique ability" is present here. In *United States v. Ali*, 793 F. Supp. 2d 386 (D.D.C. 2011), the district court held Mr. Ali in a case involving piracy and where Mr. Ali had a history of making false statements to the Immigration and Naturalization Service. *Id*. at 389. Mr. Ali had also recently lived outside of the United States in Somalia. *Id*. Mr. Lee does not have any similar history or connections. Finally, the government's own reference, *United States v. Alatishe*, 768 F.2d 364 (D.C. Cir. 1985), highlights the concern of individuals in drug trafficking cases having "resources and foreign contacts to escape to other countries." *Id*. at 370 n.13. The government

has provided no argument, let alone evidence to find that Mr. Lee has the resources or contacts to escape.

Furthermore, a defendant should not be detained as a "serious risk" of flight when the risk of non-appearance can be mitigated by conditions of release. The only defendants who qualify for detention under § 3142(f)(2) are those who are "[t]rue flight risks"—defendants the government can prove are likely to willfully flee the jurisdiction with the intention of thwarting the judicial process. The government has not met its burden to seek detention of Mr. Lee as a "serious risk of flight" and, as stated below, there are conditions that can reasonably ensure his appearance at court.

## V. The Government Cannot Meet Its Burden to Demonstrate that Mr. Lee is a Flight Risk or Danger to the Community.

The D.C. Circuit recently reiterated the clear and convincing standard that the government must meet to justify detaining a defendant as a danger to the community:

> The crux of the constitutional justification for preventive detention under the Bail Reform Act is that '[w]hen the Government proves by clear and convincing evidence that *an arrestee presents an identified and articulable threat to an individual or the community*, . . . a court may disable the arrestee from executing that threat. . . . Therefore, to order a defendant preventatively detained, a court must identify an articulable threat posed by the defendant to an individual or the community.

*United States v. Munchel*, 991 F.3d 1273, 1282-83 (D.C. Cir. 2021) (quoting *Salerno*, 481 U.S. at 751) (emphasis added); *see also United States v. Patriarca*, 948 F.2d 789, 792 (1st Cir. 1991) (explaining that the defendant must pose an actual danger to community, not that the defendant in theory posed a danger to the community). The government has not and cannot meet its burden here and Mr. Lee should be released under conditions. The Bail Reform Act factors demonstrate that there are conditions or combinations of conditions that can reasonably assure Mr. Lee's appearance at trial and protect the public.

*A. The Nature and Circumstances of the Offense*

The Complaint charges Mr. Lee with conspiracy to distribute a controlled substance. However, neither the Complaint nor the government's detention memorandum includes any allegations of violence, use of a firearm, or any other behavior to support a finding by clear and convincing evidence that Mr. Lee would be a danger to the community if released. Instead, the government focuses on the potential sentence if Mr. Lee was convicted, but as described above, that is not sufficient to support a finding of risk of flight and does not pertain to dangerousness at all.

Additionally, as described above, the government waited over a year from the alleged beginning of the conspiracy to charge Mr. Lee and stop the alleged behavior that the government now argues is so dangerous to warrant Mr. Lee's detention. The government cannot both claim that the actions are so dangerous to warrant detention and wait over a year to cease the alleged conduct. The Magistrate Judge considered the nature and circumstance of the offense and set conditions that would reasonably ensure Mr. Lee's appearance and the safety of the community. The nature and circumstances of the offense do not justify detention.

*B. The Weight of the Evidence*

The weight of the evidence is the least important factor for the Court to consider because it is directly contradictory to the Court's mandate that Mr. Lee is innocent until proven guilty, but even the weight of the evidence and does not justify a finding that Mr. Lee would be a danger to the community or risk of flight if released.

Counsel has received no discovery and relies solely on the government's proffer in its appeal of Mr. Lee's pretrial release. The evidence the government identifies pertaining to Mr. Lee is (1) that when his apartment was searched there was cash, 4 pills, a dirty spoon, and a scale, *see* Gov't Appeal, ECF No. 8 at 3-4 (the second image makes clear the "drugs" identified

were 4 pills), (2) surveillance of Mr. Lee handing packages to Mr. Lin, and (3) unspecified "cell site location" and "physical evidence." *Id*. at 5. The proffer from the government barely contains any specific evidence or allegations, interestingly void of a single date or specific description of the actual electronic or physical evidence. The proffer is not substantial evidence or strong evidence against Mr. Lee. The weight of the evidence as described by the government is at best entirely unclear.

Additionally, the proffer in the government's memorandum does not include any allegations of violence. "Even overwhelming evidence of guilt would not, alone, meet [the clear and convincing test]." *United States v. Taylor*, 289 F. Supp. 3d 55, 66 (D.D.C. 2018). The government references two firearms located at Mr. Lee's residence and seized by the officers, one of which was lawfully registered. The fact that Mr. Lee allegedly possessed a firearm is not itself sufficient to find Mr. Lee is a danger to the community if released. Many individuals charged with illegally possessing firearms are released pretrial. And Mr. Lee is not charged with any offense related to firearms, so the firearms are not evidence of the charged offense.

The weight of the evidence does not support detention.

*C. The History and Characteristics of Mr. Lee*

Mr. Lee's history and characteristics not only rebut the presumption as discussed above, but also demonstrate that there are conditions of release that can reasonably assure his appearance and protect the community. As discussed above, Mr. Lee has significant ties to his community, including his aunt, uncle, girlfriend, and friends. Mr. Lee was raised in Los Angeles and has built his life there. The government points to Mr. Lee's other family in South Korea, but Mr. Lee has not lived there since he was ten years old and that family that raised him is in Los Angeles. Mr. Lee's ties to his community are strong and will ensure his appearance at court and protect the community.

The government implies that for the last few months Mr. Lee was not actually working as he reported to pretrial services. However, as counsel confirmed with Mr. Daniel Kim, Mr. Lee's work as a chef was sporadic and at different restaurant locations than his prior long-time employment with Mr. Kim. And if Mr. Lee were released, Mr. Kim can assist Mr. Lee in getting a position with Mr. Kim's construction company that works on projects in Los Angeles.

Mr. Lee's history and characteristics support a finding, as the Magistrate Judge found, that there are conditions of release which will ensure his appearance and the safety of the community.

*D. The Nature and Seriousness of the Danger to Any Person or the Community Posed by Mr. Lee's Release*

The government has not and cannot provide clear and convincing evidence to support a finding that Mr. Lee would be a danger to the community if released. First, the dangerousness analysis "does not turn on any generalized, backward-looking assessment" of the offender or the crime. *Munchel*, 991 F.3d at 1286 (Katsas, J., concurring). "Instead, it turns on a specific, forward looking assessment of whether" the individual "currently pose[s] an unmitigable threat to public safety." *Id*. The government has not and cannot provide specific evidence to support a finding that Mr. Lee poses an unmitigable threat to public safety.

The government does not point to specific facts about Mr. Lee himself to attempt to justify detention based on dangerousness. Instead, the government references statistics about the general dangerousness of methamphetamine. That is not the dangerousness analysis that the Court must conduct. As the Magistrate Judge found, there are conditions of release that will reasonably ensure the safety of the community, including location monitoring.

The government has not provided sufficient evidence for the Court to find that no combination of conditions could reasonably ensure the safety of the community and Mr. Lee's appearance at court.

## VI. Statistics Showing that It Is Extremely Rare for Defendants on Bond to Flee or Recidivate Demonstrate that Mr. Lee Does Not Pose A Serious Risk of Flight or Danger to the Community.

In this case, this Court should be guided by Administrative Office of the Courts statistics showing that nearly everyone released pending trial appears in court and does not reoffend. In fact, in 2019, 99% of released federal defendants nationwide appeared for court as required and 98% did not commit new crimes on bond.[9] Significantly, this near-perfect compliance rate is equally evident in federal districts with very high release rates and those with very low release rates.[10] Even in districts that release two-thirds of all federal defendants on bond, fewer than 1% fail to appear in court and just over 2% are rearrested while released.[11] The below chart reflects this data:

[9] AO Table H-15 (Dec. 31, 2019), *available at* Mot. for Bond, *United States v. Rodriguez*, No. 19-CR-77 (E.D. Wis. Apr. 2, 2020), ECF No. 41, Ex. 1, archived at https://perma.cc/LYG4-AX4H (showing a nationwide failure-to-appear rate of 1.2% and a rearrest rate of 1.9%).

[10] The districts with the highest and lowest release rates were identified using the version of AO Table H-14A for the 12-month period ending December 31, 2019. *See* AO Table H-14A (Dec. 31, 2019), https://perma.cc/32XF-2S42. The failure-to-appear and rearrest rates for these districts were calculated using Exhibit 1, AO Table H-15. The districts with the lowest release rates in 2019 were, from lowest to highest, S.D. California, W.D. Arkansas, E.D. Tennessee, S.D. Texas, E.D. Missouri, N.D. Indiana, E.D. Oklahoma, W.D. Texas, W.D. North Carolina, C.D. Illinois; the districts with the highest release rates are, from lowest to highest, E.D. Michigan, E.D. Arkansas, D. New Jersey, E.D. New York, D. Maine, D. Connecticut, W.D. New York, W.D. Washington, D. Guam, D. Northern Mariana Islands. *See* AO Table H-14A.

[11] *See* AO Table H-15; AO Table H-14A.




## VII. Mr. Lee Must Be Released Because There Are Conditions That Will Reasonably Assure Appearance and Safety.

Mr. Lee must be released because there are conditions that will reasonably assure the safety of the community and Mr. Lee's appearance in court. A defendant cannot be detained "unless a finding is made that no release conditions 'will reasonably assure . . . the safety of the community'" and the defendant's appearance in court. *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (quoting 18 U.S.C. § 3142(e)). Here, the government has not carried its high burden of proving by clear and convincing evidence that there are no release conditions that will reasonably assure the safety of the community. *See id.* at 708 n.8. The government also has not proved by a preponderance of the evidence that there are no conditions that would reasonably assure Mr. Lee's appearance in court. Thus, Mr. Lee cannot be detained.

The Court should continue to apply the conditions of release ordered by Magistrate Judge Christensen in the Central District of California. *See* Ex. A.

## VIII. Conclusion

For the foregoing reasons, Mr. Lee respectfully requests that this Court deny the government's appeal and release Mr. Lee with conditions.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

______/s/___________________
Diane Shrewsbury
Assistant Federal Public Defender
625 Indiana Ave., N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500