## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL NO. 26-cr-14 (JDB)** |
| | : | |
| | : | |
| **ERNEST CHENG LIN,** | : | |
| also known as "Alex Huang," | : | |
| | : | |
| **Defendant.** | : | |

## STATEMENT OF OFFENSE IN SUPPORT OF GUILTY PLEA

### I.     Summary of the Plea Agreement

Defendant Ernest Cheng Lin agrees to admit guilt and enter a plea of guilty to the Indictment, charging him with conspiracy to distribute and possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine and a mixture and substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 841(b)(1)(C) and 846.

### II.     Elements of the Offense

The essential elements of Count One of the Indictment, conspiracy to distribute and possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine and a mixture and substance containing a detectable amount of cocaine, each of which the government must prove beyond a reasonable doubt to sustain a conviction, are:

(1) The Defendant and one or more persons entered into a conspiracy, agreement, or understanding to distribute and possess with intent to distribute a controlled substance;

(2) The Defendant knew the purpose of the conspiracy, agreement, or understanding;

(3) The Defendant deliberately joined the conspiracy, agreement, or understanding with

1

knowledge of the purpose of the conspiracy, agreement, or understanding; and

(4) The Defendant could reasonably foresee that the conspiracy, agreement, or understanding involved 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine and a mixture or substance containing a detectable amount of cocaine.

III.    Penalties for the Offense

The penalties for conspiracy to distribute and possess with intent to distribute 500 grams or more of a detectable amount of methamphetamine and a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 841(b)(1)(C) and 846, are as follows:

(A)    A term of imprisonment of not less than ten years and up to life imprisonment;

(B)    A fine not to exceed the greater of that authorized in accordance with the provisions of Title 18 or $10,000,000;

(C)    A term of supervised release of not less than five years and up to life; and

(D)    A special assessment of $100.

United States Sentencing Guideline § 5E1.2 permits the Court to impose an additional fine to pay the costs of imprisonment and any term of supervised release and/or probation.

IV.    Brief Statement of the Facts

The following statement of facts does not purport to include all of the Defendant's illegal conduct or the conduct of his co-conspirators or co-defendants. It also does not purport to be an inclusive recitation of everything that the Defendant heard, knew, or witnessed concerning the illegal activities of himself or others. The limited purpose of the foregoing statement of facts is to represent sufficient information for the Court to find a factual basis for accepting the Defendant's guilty plea to the Indictment.

Had this case gone to trial, the government's evidence would have proved the following

beyond a reasonable doubt:

1.    Between October 2024 and January 2026, the Defendant conspired with others to distribute more than 48 kilograms of methamphetamine and 55 grams of cocaine. The Defendant advertised drugs he had available for sale on Telegram. The Defendant would ship drugs through the mail to purchasers who would send him cash through the mail as payment or would send payment through CashApp.

2.    The Defendant coordinated with his co-conspirators to procure the methamphetamine and cocaine for customers via text messages sent on Telegram, WhatsApp, and other messaging platforms. The Defendant and his co-conspirators discussed prices and the quality of the drugs, exchanged photographs of the drugs, and discussed logistics for delivery.

3.    Specifically, in October 2024, the Defendant sent approximately 241 grams of methamphetamine to Manassas, Virginia. The Defendant received approximately $900 in cash, secreted in a birthday card, as payment. The Defendant requested that the money be mailed to Alex Huang at an address in California.

4.    In November 2024, the Defendant sent approximately 447 grams of methamphetamine to Manassas, Virginia. The Defendant received approximately $1,350 in cash, again secreted in a birthday card, as payment. The Defendant requested that the money be mailed to an address in California.

5.    In December 2024, the Defendant sent approximately 2,344 grams of methamphetamine to Manassas, Virginia. The Defendant received approximately $5,252 in cash and $998 via CashApp. The Defendant requested that the money be mailed to Alex Huang at an address in California and sent to a CashApp handle also associated with Alex Huang.

3

6.    In February 2025, the Defendant sent approximately 2,222 grams of methamphetamine to Washington, D.C. The Defendant received approximately $6,180 in cash as payment. The Defendant requested that the money be mailed to an address in California.

7.    In March 2025, the Defendant sent approximately 2,224 grams of methamphetamine to Washington, D.C. The Defendant received approximately $6,180 in cash as payment. The Defendant requested that the money be mailed to an address in California.

8.    In May 2025, the Defendant sent approximately 2,238 grams of methamphetamine to Washington, D.C. The Defendant received approximately $7,290 in Bitcoin to a wallet address provided by the Defendant via Telegram.

9.    In June 2025, the Defendant sent approximately 4,456 grams of methamphetamine to Washington, D.C. The Defendant received approximately $12,000 in cash as payment. The Defendant requested that the money be mailed to an address in California.

10.    In July 2025, the Defendant distributed approximately 8,923 grams of methamphetamine and 55.79 grams of cocaine in Diamond Bar, California. The Defendant received approximately $26,000 in cash as payment. During the exchange, the Defendant twice met with Individual 1. The meetups were monitored by law enforcement engaged in surveillance, unbeknownst to the Defendant. Each time he left the meeting with a box, which contained the methamphetamine and cocaine.

11.    In October 2025, the Defendant sent approximately 2,225 grams of methamphetamine to Washington, D.C. The Defendant received approximately $5,750 in cash as payment. The Defendant requested that the money be mailed to an address in California.

12.    In November 2025, the Defendant sent approximately 4,462 grams of methamphetamine to Washington, D.C. The Defendant received approximately $12,860 in cash as payment. The Defendant requested that the money be mailed to an address in California.

13.    In December 2025, the Defendant sent approximately 1,015 fake Adderall pills to Washington, D.C., which weighed approximately 421 grams and contained a detectible amount of methamphetamine. The Defendant received approximately $1,400 in cash as payment. The Defendant requested that the money be mailed to an address in California.

14.    In January 2026, the Defendant arranged for the distribution of approximately 40 pounds of methamphetamine in Rowland Heights, California. Half of the methamphetamine was seized by law enforcement, which was approximately 9,071 grams of methamphetamine.

15.    During the course of the conspiracy, the Defendant received $86,160 from undercover law enforcement as payment for controlled substances.

16.    The Defendant further agrees that he personally has read, or had read to him, the Indictment in this case. The Defendant agrees that he does not have any information to dispute or disprove those allegations and charges against him set forth in the Indictment in any way.

Respectfully Submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:    */s/ Kate M. Naseef*
Kate M. Naseef
Michael Barclay
Assistant United States Attorney

5

## DEFENDANT'S ACCEPTANCE

I have read every page of the Government's proffer of evidence relating to my guilty plea. I fully understand this Agreement and agree to it without reservation. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Agreement fully. I am pleading guilty because I am in fact guilty of the offense(s) identified in this Agreement.

I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in this Agreement. I am satisfied with the legal services provided by my attorney in connection with this Agreement and matters related to it.

Date: 5/7/26

Ernest Cheng Lin
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read every page constituting the government's proffer of evidence related to my client's guilty plea. I have reviewed the entire proffer with my client and have discussed it with her fully. I concur in my client's agreement with and acceptance of this proffer.

Date: 5/7/26

Melissa Joy Jackson
Attorney for Defendant

6