**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 26-cr-14-6 (JDB)** |
| **KEN CHIAEN CHANLEE,** | : | |
| **Defendants.** | : | |

## GOVERNMENT'S MOTION FOR REVIEW AND APPEAL OF RELEASE ORDER

The United States respectfully moves this Court to hear an appeal to review a Central District of California Magistrate Judge's denial of the government's Motion for Pretrial Detention, hold a detention hearing on Friday, June 12, 2026, and issue an order detaining Ken Chiaen Chanlee (the "Defendant"). A magistrate judge in the Central District of California ordered the Defendant released on Friday, June 5, 2026, and denied the government's request for a stay of release.

The Defendant is a high-level supplier for a drug trafficking organization ("DTO") based out of Los Angeles, California that sells wholesale quantities of methamphetamine. Between June 2025 and January 2026 alone, the Defendant supplied approximately 29 kilograms of methamphetamine that were sold to an FBI undercover officer ("UC") and lawfully seized communications between the Defendant and co-conspirators show that the Defendant was personally involved in trafficking methamphetamine to other customers.

The Defendant is charged in this District with an offense that carries a presumption that no condition or combination of conditions will sufficiently guarantee the Defendant's presence in court and protect the safety of the community. The Defendant faces significant jail time, including

a mandatory minimum sentence of ten years and a guideline range that the government estimates would be significantly longer. The Defendant has no ties to the District of Columbia, travels to Mexico multiple times per month, and his wife has no legal status in the United States. Accordingly, the Defendant presents a serious risk of flight and danger to the community that cannot be mitigated by any condition or combination of conditions and should be detained.

## **BACKGROUND**

On June 3, 2026, the Defendant and four of his co-defendants, were arrested in Los Angeles, California, on warrants issued in this District in the above-captioned matter.[1] The Defendant had an initial appearance before the Magistrate Court in the Central District of California on June 3, 2026, pursuant to Rule 5 of the Federal Criminal Rules of Procedure. At that time, the government moved to detain the Defendant pending his initial appearance and arraignment in the District of Columbia. A U.S. Magistrate Judge for the Central District of California ("CDCA"), held a detention hearing on June 5, 2026, and denied the government's motion for pretrial detention and ordered the Defendant's released.[2] The magistrate judge refused to stay the order of release.

On May 19, 2026, a federal grand jury sitting in the District of Columbia returned a two-count Superseding Indictment against the Defendant and six co-conspirators, charging the

---

[1] Valley Yuanchieh Chung and Xian Tong Lin were both detained at their initial appearances in CDCA. Ricky Choe was released. Tong Li was ordered released by a magistrate judge in CDCA, but the government filed a Motion for Temporary Detention and Stay of Release, ECF No. XX, and a Motion for Review and Appeal of Release Order, ECF No. XX. Chang Hoon Lee has been in custody since his arrest in January.

[2] The government has not yet obtained a copy of the release order outlining the conditions of release.

Defendant with conspiracy to distribute and possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii), and 846. The charge carries a presumption that no condition or combination of conditions will sufficiently guarantee the Defendant's presence in court and protect the safety of the community.

The Indictment in this case is the product of an extensive, long-term investigation conducted by agents from the Federal Bureau of Investigation ("FBI"). The Government anticipates that the evidence at trial will show that the Defendant obtained methamphetamine from several suppliers in Mexico and the United States and then resold kilogram quantities of methamphetamine to others in California and around the United States. In addition to the physical evidence from the seizures of methamphetamine that was sold to the FBI UC, if this case were to proceed to trial the government would introduce evidence of the Defendant's text messages with co-conspirators, discussing logistics for the sale of methamphetamine and the attempted sale of fentanyl. The government would also introduce photographs sent and received by the Defendant of methamphetamine.

Between January and May 2026, the Defendant traveled to Mexico three to five times per month. Records show the Defendant had been crossing the border using a vehicle before January 2026, but over the last five months the Defendant has been crossing the border as a pedestrian at the San Ysidro border entry in San Diego, CA. At the time of arrest, the Defendant's wife told law enforcement that she did not have legal status in the United States. Additionally, law enforcement knows that the Defendant has property in Mexico.

The government is not aware of any contacts the Defendant maintains in the District of Columbia.

**ARGUMENT**

**Standard of Review**

The Bail Reform Act does not set out a standard of review to be applied by the District Court in reviewing the denial of a Motion for Pretrial Detention by a Magistrate Judge. However, the District Court has "broad discretion" in its review of decisions under the Bail Reform Act. *United States v. Munchel,* 991 F.3d 1273, 1280 n. 3 (D.C. Cir. 2021). "Evaluating the competing considerations is a task for the commissioner or judge in the first instance, and then the judges of the District Court (where they have original jurisdiction over the offense) have a broad discretion to amend the conditions imposed, or to grant release outright, if they feel that the balance has been improperly struck." *Id*. (quoting *Wood v. United States*, 391 F.2d 981, 984 (D.C. Cir. 1968).

Furthermore, every circuit that has considered the question has held that a district court can review a magistrate judge's release or detention order *de novo*. *United States v. Chrestman*, No. 21-mj-218, 2021 WL 765662 at *5 n. 5 (D.D.C., Feb. 6, 2021) (collecting Court of Appeals' decisions "uniformly endorsing a *de novo* standard of review"). This conclusion is supported by the statutory language of both the Bail Reform Act and the Federal Magistrates Act. *Id*. at *6 ("In short, both the BRA and the Federal Magistrates Act lead to the conclusion that a district court reviews a magistrate judge's pretrial release or detention order *de novo*. Unsurprisingly, this view is shared by every circuit court to have addressed the standard of review under § 3145 … and by the Local Rules of this Court, *see* Local Crim. R. 59.3(b)").

**The Bail Reform Act**

Under the Bail Reform Act, 18 U.S.C. §§ 3141 *et seq.*, federal courts must order a defendant's pre-trial detention upon determining that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person

and the community." 18 U.S.C. § 3142(e). A finding of dangerousness must be supported by clear and convincing evidence.18 U.S.C. § 3142(f); *see United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987). A finding of risk of flight must be supported by a preponderance of the evidence. *Simpkins*, 826 F.2d at 96. If the Court finds that no conditions will reasonably assure both the appearance of the defendant and the safety of any other person and the community, he or she shall order the defendant detained. 18 U.S.C. § 3142(e)(1). Thus, detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both.

The Bail Reform Act lists the following four factors as relevant to the determination of whether detention is appropriate: (1) the nature and circumstances of the crimes charged, (2) the history and characteristics of the defendant, (3) the seriousness of the danger posed by the defendant's release, and (4) the evidence of the defendant's guilt. *See* 18 U.S.C. § 3142(g).

**Statutory Presumption of Dangerousness and Risk of Flight**

Under 18 U.S.C. § 3142(e)(3)(A), there is a rebuttable presumption that no conditions will assure as to both flight risk and danger if the defendant is charged with a Controlled Substances Act offense with a statutory maximum of 10 years or more. In this case, the Defendant is charged with an offense for which the maximum term of imprisonment is life as prescribed by the Controlled Substance Act. As the penalty of life imprisonment is more than 10 years, the presumptions of Section 3142(e) apply here.

An indictment charging a qualifying offense, as is the case here, is sufficient to trigger this rebuttable presumption. *United States v. Smith*, 79 F.3d 1208 (D.C. Cir. 1996); *United States v. Mosuro*, 648 F. Supp. 316, 318 (D.D.C. 1986). When the presumption is triggered, it operates "at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir.

1985). However, the presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption remains as an evidentiary finding militating against release and to be weighed along with all the evidence relating to the factors listed in Section 3142(g). *See United States v. Cherry*, 221 F. Supp. 3d 26, 32 (D.D.C. 2016) (citing *United States v. Ali*, 793 F. Supp. 2d 386, 391 (D.D.C. 2011) and *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986)). In other words, "it does not follow that the effect of the presumption disappears as soon as the defendant produced some contrary evidence. Congress framed the flight presumption in light of its general finding, based on extensive testimony, that flight to avoid prosecution is particularly high among those charged with major drug offenses." *United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir. 1985); *see also Cherry*, 221 F. Supp. 3d at 32; *Ali*, 793 F. Supp. 2d at 391. For all of the reasons addressed below, the Defendant will be unable to satisfy his burden to rebut the presumption that no condition or combination of conditions will reasonably assure the appearance of the Defendant and the safety of the community.

**<u>Nature and Circumstances of the Offenses Charged</u>**

The nature and circumstances of the offense charged establish that the Defendant is a risk of flight and a danger to the community. The conditions imposed by the Magistrate Judge are insufficient to assure his appearance in this District or the safety of the community, nor are there any conditions or combination of conditions that would do so. No conditions could create a meaningful restriction on the Defendant's ability or incentive to flee or his ability to continue to traffic drugs given his frequent travel to Mexico, his property there, and the proximity between his home and the border, which he can easily walk across. Conditions of release would be entirely dependent on the presumption that the Defendant will comply with the law now that he has been arrested.

The possibility of a severe sentence is also an important factor in assessing a defendant's incentive to flee. *See United States v. Hong Vo*, 978 F. Supp. 2d 41, 43 (D.D.C. 2013) (holding the nature and circumstances of the offenses charged against defendant strongly favor detention because of the substantial incentive to flee the United States); *United States v. Anderson*, 384 F.Supp.2d 32, 36 (D.D.C. 2005) (holding the gravity of the offenses and the potential prison term create a considerable incentive for the defendant to avoid prosecution and the likelihood of imprisonment in the event of a conviction); *see also Ali*, 793 F. Supp. 2d at 392. As addressed above, the Defendant faces a mandatory minimum sentence of 10 years if convicted on the counts charged in the Superseding Indictment. The U.S. Sentencing Guidelines range for the charged offense would be even higher, given the amount of drugs involved and the Defendant's importation of methamphetamine into the United States—up to 235 to 293 months imprisonment for the Defendant if he went to trial. *See* U.S.S.G. §§ 2D1.1. Even if the Defendant were to plea to the Superseding Indictment, receive credit for acceptance of responsibility, and qualify for the Safety Valve, he would be facing 135 to 168 months imprisonment. In light of the strength of the evidence, this factor is a significant one in this case.

Federal courts have repeatedly recognized that "[f]light to avoid prosecution is particularly high among persons charged with major drug offenses," because "drug traffickers often have established ties outside the United States . . . [and] have both the resources and foreign contacts to escape to other countries." *See, e.g., Alatishe*, 768 F.2d at 370 n.13 (citing S. Rep. No. 98-225 at 20 (1983), reprinted in 1984 U.S.C C.A.N. 1, 23). This is nowhere more evident than in the type of organized crime in which the Defendant has engaged. Based on the evidence, the Defendant had suppliers in Mexico, travels there frequently, and even owns property there. Organized drug conspiracies often span multiple countries and have the potential to generate millions of dollars in

gross proceeds from the sale of potent controlled substances. Indeed, "Congress made 'risk of flight' a ground for detention because it believed that there were major drug dealers to whom the posting and losing of even large amounts of money bond were not a deterrent, but a mere cost of doing business." *United States v. Battle*, 59 F.Supp.2d 17, 19 (D.D.C. 1999).

**History and Characteristics of the Defendant**

The Defendant has a limited criminal history—he was arrested for possession of a controlled substance in 2008 and received a deferred judgement. However, the Defendant has no contacts in the District of Columbia, and he regularly travels to Mexico, where he has property.

Given the severity of the sentence that the Defendant is facing, his travel, and his resources, the Defendant has the motive and opportunity to flee the country and not appear in the District of Columbia. *See Hong Vo*, 978 F. Supp. 2d at 43 (finding detention warranted because not only was defendant indicted on serious charges carrying a severe punishment potential, but defendant had ability to flee the United States); *Anderson*, 384 F. Supp. 2d at 36 (finding detention warranted because not only did the defendant have the ability to flee D.C. and the United States, but also had the ability to live comfortably in foreign jurisdiction and evade capture due to his substantial assets abroad). There is no condition or combination of conditions that would assure the Defendant's appearance in the District of Columbia to face the Superseding Indictment against him. *See* 18 U.S.C. § 3142(e)(1).

**Safety of the Community**

A determination of dangerousness to the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). Federal courts have recognized that drug traffickers are likely to continue engaging in drug related activities if released on bail and thus constitute a danger to the community. *See, e.g., Alatishe*, 768 F.2d at 370 n.13 (citing S. Rep. No. 98-225 at 20 (1983),

reprinted in 1984 U.S.C C.A.N. 1, 23); *accord United States v. Creekmore*, 1997 W.L. 732435 (D.D.C. 1997). The Defendant conspired to ship numerous kilograms of methamphetamine, which is not just dangerous, but also deadly. According to the Centers for Disease Control (CDC), among the 309,274 overdose deaths during January 2021–June 2024 in 49 states and DC, 31.2 percent involved methamphetamine.[3] While 68.8 percent of the methamphetamine-involved overdose deaths co-involved opioids, the remaining 31.2 percent did not.[4]

Importantly, the Defendant was not involved in distributing personal-use quantities of methamphetamine. He was distributing wholesale quantities for redistribution. He also attempted to distribute wholesale quantities of fentanyl. Based on the evidence in this case, there is a real danger that the Defendant will return to drug dealing if released. Accordingly, there is no condition or combination of conditions that would assure the safety of the community. *See* 18 U.S.C. § 3142(e)(1).

**Weight of the Evidence**

Where the evidence of guilt is strong, it provides a considerable additional incentive to flee. *See United States v. Medina*, 255 F. Supp. 2d 3, 4 (D.D.C. 2006) (finding detention warranted because government's evidence was strong against the defendant); *see also United States v. Vergara*, 612 F. Supp. 2d 36, 37 (D.D.C. 2009). The evidence against the Defendant is

[3] *See Morbidity and Mortality Weekly Report*, "Drug Overdose Deaths Involving Stimulants — United States, January 2018–June 2024," Aug. 28, 2025, https://www.cdc.gov/mmwr/volumes/74/wr/mm7432a1.htm#:~:text=SUDORS:%20Stimulant%2DInvolved%20Overdose%20Deaths,stimulants%20and%20opioids%20(44.2%25).

[4] *Id*.

overwhelming. The evidence includes the recorded communications described above and physical evidence stemming from the seizure of methamphetamine.

## CONCLUSION

For the foregoing reasons, the government respectfully requests this Court to detain the Defendant pending trial. An analysis of the factors laid out in 18 U.S.C. § 3142(g) establishes (a) by clear and convincing evidence that there are no conditions or combination of conditions that reasonably assure the safety of the community and (b) by a preponderance of the evidence that that there are no conditions or combination of conditions that reasonably assures the appearance of the Defendant in court. *See* 18 U.S.C. § 3142(e)(1), (f)(2). Accordingly, the Court should detain the Defendant pending trial.

Respectfully submitted this 5th day of June 2026.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

*/s/ Kate M. Naseef*

KATE M. NASEEF
Assistant United States Attorney
VA Bar Number 87850
Violent Crime and Narcotics Trafficking Section
601 D Street, N.W.
Washington, D.C. 20530
Office: 202-809-2057
Kate.Naseef2@usdoj.gov