**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **CRIMINAL NO. 26-CR-14-6 (JDB)** |
| | **:** | |
| | **:** | |
| **KEN CHIAEN CHANLEE,** | **:** | |
| | **:** | |
| **Defendants.** | **:** | |

## GOVERNMENT'S REPLY IN SUPPORT OF MOTION FOR REVIEW AND APPEAL OF RELEASE ORDER

The United States submits this reply in support of its motion for this Court to hear an appeal to review a Central District of California Magistrate Judge's denial of the government's Motion for Pretrial Detention and issue an order detaining Defendant Ken Chiaen Chanlee ("Chanlee" or the "Defendant") pending trial in this District. Defendant has failed to rebut the statutory presumption that no conditions or combination of conditions will reasonably assure the appearance of the Defendant or the safety of the community. Even if he had, the Government has proven by clear and convincing evidence that no combination of conditions will reasonably protect the community, or in the alternative by a preponderance that no conditions will mitigate the risk of flight.

First, Chanlee argues that that the government has not offered evidence particularized to him, as opposed to other defendants, and in any event such assertions are vague and unparticularized. *See* ECF No. 64 at 1–2, 5–6. His argument flows through both the nature and circumstances of the offense and the weight of the evidence. 18 U.S.C. § 3142(g)(1), (2). The communications in this case show that Chanlee was a prolific dealer of cocaine, methamphetamine, fentanyl, and oxycodone. Chanlee appears to have supplied the

1

methamphetamine ultimately seized by law enforcement. For example, in June 2025, after a co-conspirator ordered 10 "units water" (or pounds of methamphetamine) from Chanlee, Chanlee confirmed that he would be able to supply the methamphetamine. Law enforcement would ultimately purchase this methamphetamine through Ernest Lin.

From: 12138013367@s.whatsapp.net CKEN
Sinaloa just called me
Priority: Normal
Platform: Mobile

6/10/2025 9:20:04 PM(UTC+0)

From: 12138013367@s.whatsapp.net CKEN
Confirmed for tomorrow by 12pm
Priority: Normal
Platform: Mobile

6/10/2025 9:20:09 PM(UTC+0)

Chanlee would also store narcotics in his residence, suggesting that even home detention is not sufficient to protect the community. In August 2025, after the co-conspirator ordered three pounds of methamphetamine, Chanlee directed him to go to his (Chanlee's) house to get the methamphetamine.

2



Similarly, Chanlee's messages indicate that he sourced methamphetamine locally as well as from sources abroad.



As this Court has previously noted, the scale of the alleged trafficking operation adds to the seriousness of the charges. Chanlee argues that the Superseding Indictment does not accuse Chanlee of violence or firearm possession, but as this Court has previously recognized, "[t]rafficking wholesale volumes of controlled substances is a dangerous offense, regardless of whether it involves additional allegations of violence." ECF No. 15, Memorandum Opinion and Order (February 4, 2026).

Second, Chanlee argues that his history and characteristics not only rebut the presumption but show that conditions are sufficient to mitigate his risk of flight. Chanlee represents that he is the "primary financial support for his family" through "wholesale motorcycle sales for a dealership." ECF No. 64 at 7. Based on public records, Chanlee is the sole proprietor of two different California-based entities: KCL Holdings and KCL Consulting Group. However, Chanlee has not provided any additional evidence to support his claim that he has legitimate income, such as pay stubs or business records from his companies. In other words, Chanlee has done nothing to rebut the presumption, and the government's evidence indicates that Chanlee spent a considerable amount of his time and earned a significant amount of money from illicit drug trafficking.

Third, Chanlee's proposed condition—making his wife a third-party custodian, plus travel restrictions—gives the Court no assurance that Chanlee will appear as required or not pose a danger to the community. Chanlee engaged in extensive drug dealing from his house where he lived with his wife. Either Chanlee was able to effectively hide his drug trafficking from his wife, or she turned a blind eye to it. Regardless, there is no reason to think his wife would now be an effective check on that behavior. Furthermore, Chanlee's wife not only has a clear personal incentive to keep her husband out of jail, but being a third-party custodian would put her in a compromising situation. Chanlee's wife has concerns about her legal status in the United States,

based on statements she made to law enforcement at the time of Chanlee's arrest. Thus she would likely hesitate to alert law enforcement about Chanlee's violations of pretrial release conditions, for fear of potential immigration consequences for herself. Most concerningly, there is evidence that his wife facilitated some of the behavior at issue—in particular, text messages and deposit receipts indicate that she facilitated the purchase of real property in Tijuana, Mexico for Chanlee and a co-conspirator with the proceeds of drug trafficking. There are also text messages suggesting that she coordinated with other co-conspirators in the purchase of marijuana strains, which (thus far in this case) has generally meant black market marijuana.

For the foregoing reasons, the government respectfully requests this Court to detain the Defendant pending trial.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

_____
KATE M. NASEEF
Assistant United States Attorney
VA Bar Reg. No. 87850
Violent Crime and Narcotics Trafficking Section
601 D Street, N.W.
Washington, D.C. 20530
Office: 202-252-1796
Kate.Naseef2@usdoj.gov