**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES**<br><br>v.<br><br>**TONG LI,**<br>        **Defendant.** | **Criminal Action No. 26-14-3 (JDB)** |

## MEMORANDUM OPINION & ORDER

Tong Li is accused of conspiracy to distribute and possession with intent to distribute 500 grams or more of methamphetamine, 100 kilograms or more of marijuana, as well as cocaine and hallucinogenic mushrooms.  See Mem. Op. & Order on Gov't's Appeal of Release Order at 1, Dkt. 62 (Mem. Op.); 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), (b)(1)(B)(vii), (b)(1)(C) & 846.  He is also charged with conspiracy to commit money laundering.  See Mem. Op. at 1; 18 U.S.C. § 1956(a)(1)(B)(i) & (h).  Li was arrested in the Central District of California on June 3, 2026, and he had his initial appearance before a magistrate judge there the next day.  Mem. Op. at 1  The magistrate judge denied the government's motion for pretrial detention and the government appealed to this Court.  After briefing, this Court ruled for the government and ordered Li detained pretrial.  See id. at 8-9.  Li has now moved for reconsideration of that decision, Mot. for Reconsideration, Dkt. 86, and the Court held a hearing on the motion for reconsideration on July 28, 2026.

Although Li relies on facts available to him at the time of this Court's ruling in favor of pretrial detention, the information presented in his motion for reconsideration—new to the Court— reveals extensive ties to the Los Angeles community and clarifies the legitimacy of the collateral offered to secure his bond.  More importantly, Li now disputes that he either engaged in any

1

criminal activity after he was on notice of the government's investigation or has foreign ties to Mexican drug traffickers.  In so doing, he carried his burden of <u>production</u> to offer some evidence to rebut the government's factual proffer both as to dangerousness and flight risk.  Because the government has failed to carry its burden of <u>persuasion</u> on either dangerousness or flight risk, the Court will grant reconsideration and order Li released.  However, given the seriousness of the offense and Li's alleged role, the Court will modify his conditions of release to include home detention.

<u>Legal Standard</u>

Courts may grant motions for reconsideration of interlocutory orders "as justice requires." <u>United States v. Hong Vo</u>, 978 F. Supp. 2d 41, 47 (D.D.C. 2013) (collecting cases).  Considerations bearing on such motions include whether the Court has "patently misunderstood the parties, made a decision beyond the adversarial issues presented, or made an error in failing to consider controlling decisions or data" and whether "a controlling or significant change in the law has occurred."  <u>Id.</u> (citation modified); <u>see also</u> <u>G&E Real Estate v. Avison Young-Washington, D.C.</u>, 201 F. Supp. 3d 50, 52 (D.D.C. 2016) (listing factors as "(1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order" (quotation omitted)).  "But where litigants have once battled for the court's decision, they should not be permitted to battle for it again."  <u>Hong Vo</u>, 978 F. Supp. 2d at 47 (citation modified).  The Bail Reform Act further provides that a detention hearing may be reopened "if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the [detention] issue."  18 U.S.C. § 3142(f).  The Court will not repeat at length here the Bail Reform Act factors to consider in determining whether to order pretrial detention, which are set out in its earlier opinion.  <u>See</u> Mem. Op. at 2.

<u>Reviewability</u>

The parties disagree over whether review of Li's motion is appropriate (or required).  The government contends that review is improper because Li could have presented the facts on which he now relies while the Court was considering the government's appeal of the release order.  Opp'n at 2-3, Dkt. 95.  For his part, Li points out that the Court then lacked access to both the detention hearing transcript and the Central District of California Pretrial Services report.  Mot. for Reconsideration at 1.  True enough.  But the underlying facts remained available to Li, especially regarding his community ties.  Moreover, Li failed to offer rebuttal evidence to the government's assertions that he engaged in criminal activity after being on notice of the criminal investigation— suggesting a risk of recidivism—and that he had Mexican drug suppliers—suggesting a risk of flight.

For the first time on reply, Li argues that it would be a "manifest injustice" not to engage in reconsideration because this Court neither reviewed the detention hearing transcript nor conducted its own hearing.  Reply at 2-3, Dkt. 99 (citing <u>United States v. Torres</u>, 929 F.2d 291, 292 (7th Cir. 1991)).  In <u>Torres</u>, the district court declined to review the detention hearing transcript and then refused to allow the defendant's family members to testify at a new hearing, requiring a proffer from defense counsel instead.  929 F.2d at 292.  That non-binding case is distinguishable twice over: the transcript was not available here and Li did not request a hearing on the government's appeal, let alone offer witnesses that the Court rejected.

Nevertheless, the Court is cognizant of the highly compressed timeline for contesting the government's appeal and certain challenges associated with Li's representation at the time of briefing that appeal.  Moreover, the Court remains sensitive to the background principle that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited

exception." United States v. Salerno, 481 U.S. 739, 755 (1987). Accordingly, the Court will consider Li's motion on the merits.

Legal Issues

Before proceeding to the factual disputes at the heart of this motion, the Court will address two legal arguments put forward by Li.

First, Li argues that the presumption of detention for serious drug trafficking crimes imposed by the Bail Reform Act is unconstitutional under Wolford v. Lopez, 146 S. Ct. 2032 (2026). Mot. for Reconsideration at 16-18. Not so. Wolford was a Second Amendment case holding that a Hawaii law prohibiting concealed-carry permit holders from carrying handguns on private property open to the public absent express consent was unconstitutional. It in no way bears on the constitutionality of the Bail Reform Act. On the contrary, the Supreme Court held in Salerno that pretrial detention under the Bail Reform Act is constitutional. Wolford did not sub silentio overrule Salerno. See Mallory v. Norfolk S. Ry., 600 U.S. 122, 136 (2023) (explaining that lower courts must follow precedent with direct application in a case).

Second, Li contends that the Court erred when it accorded the presumption of detention "substantial weight" rather than treating it as a "bursting bubble" or, at most, affording it some weight. Mot. for Reconsideration at 18-23. The Court agrees in part. Following the D.C. Circuit and other circuits that have addressed the issue, the Court rejects Li's argument that the presumption is a bursting bubble not to be considered after a defendant has offered some evidence in rebuttal. See United States v. Gamble, 810 F. App'x 7, 8 (D.C. Cir. 2020) (per curiam); United States v. Stone, 608 F.3d 939, 945 (6th Cir. 2010) (citing United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001)); United States v. Dominguez, 783 F.2d 702, 707 (7th Cir. 1986). Nevertheless, the Court agrees that it should afford the presumption only "some weight" alongside the other Bail

4

Reform Act factors.  See United States v. Jessup, 757 F.2d 378, 380-84 (1st Cir. 1985), cited by

Gamble, 810 F. App'x at 8.[1]

Factual Issues

In his motion for reconsideration, Li presents a host of facts new to the Court about his ties

to the L.A. community and the nature of his proposed collateral.  He also disputes that he engaged

in continued criminal activity after his home and a stash house were raided and alleged co-

conspirators were arrested on January 28, 2026, or that he has ties to Mexican drug suppliers.  For

the government's part, at the reconsideration hearing it proffered extensive evidence as to guilt,

some evidence relevant to ongoing criminal activity after January 28, and limited evidence

regarding ties to Mexico.

To evaluate a defendant's history and characteristics under the Bail Reform Act, courts

consider ties both to "the community in which the indictment was brought" and "a community in

the United States to which the defendant has ties."  United States v. Townsend, 897 F.2d 989, 995

(9th Cir. 1990); see also 18 U.S.C. § 3142(g)(3)(A) (community ties, length of residence in the

community, and family ties).  Li's ties to the L.A. community now appear extensive and

undisputed.  Mot. for Reconsideration at 5-8.  He has lived in the L.A. area since he was two years

old, residing in his parents' home in Walnut until his mid-twenties.  Id. at 6.  Li graduated from

high school in the area and studied at California Polytechnic State University.  Id.  He now lives

with his wife and their two minor children in his wife's childhood home in the L.A. area.  Id.

---

[1] Li also points to a study by Chicago Law's Federal Criminal Justice Clinic arguing that judges tend to give the presumption too much weight, an Administrative Office of the Courts study showing that pretrial detention has skyrocketed since the Bail Reform Act, reform proposals by the Judicial Conference and Senator Durbin, and studies about the human cost of pretrial detention and correlations with increased recidivism.  Mot. for Reconsideration 23-30.  Relatedly, he contends that Administrative Office statistics show low rates of flight or recidivism on pretrial release, including for drug trafficking offenders.  Id. at 34-36.  Those arguments seem better aimed at the political branches.

Those deep and longstanding family ties to the L.A. community weigh in favor of release because they indicate both a lower flight risk and reduced risk of recidivism.

Li is also self-employed at three businesses in the L.A. area—Hydroponic City, Buddy Bags, and BLT MSO.  See 18 U.S.C. § 3142(g)(3)(A) (employment).  But as the government has pointed out, two of his three businesses—Hydroponic City and Buddy Bags—appear to have some ties to the alleged drug trafficking organization.  Gov't's Mot. for Review & Appeal at 6-7, Dkt. 45.  The government conceded at the hearing on reconsideration that it knew little about the third business—BLT MSO—and so could not say with confidence that it was illegitimate.  Draft Hr'g Tr. 31:17-32:8.  For his part, Li submitted a letter of support from his business partner Leonard Wang saying that Li is indispensable to their business and would work there on pretrial release.  Mot. for Reconsideration at 94-95 (Ex. D: Leonard Wang Letter).  But although Li's motion states that Wang is his business partner at BLT MSO, id. at 7, Wang's letter is on Hydroponic City letterhead and only mentions Hydroponic City, so the Court does not find that Li's employment status weighs in favor of release.

Li also clarifies that the property he initially offered as collateral is his parents' home in Walnut, which they paid off in 2009, id. at 9, over a decade before the alleged drug conspiracy.  That assuages the Court's concern as to the origin of the property and whether it could have been financed through the proceeds of illegal drug trafficking.  See Mem. Op. at 7 (citing 18 U.S.C. § 3142(g)(4)).  Li now offers as collateral another real property owned by his parents with equity value of around $600,000 as well as $100,000 in cash from his wife, bringing the total value of property offered as collateral to over $1.5 million.  Mot. for Reconsideration at 9.  To be sure, this District does not typically use money bonds, whether secured by cash or real property.  See, e.g., Tr. 86:5-8, United States v. Morgan, 23-cr-239-2 (D.D.C. Feb. 18, 2022), Dkt. 33 ("[I]n the District

of Columbia—for this court and for superior court—we don't really use money bonds; we don't really use security with houses.") (statement of then-Chief Judge Howell); id. at 125:2-5 ("We don't really do bonds here" and "it is not the norm."). But this offer of additional collateral at least reinforces the Court's understanding of Li's family ties, and hence low risk of flight.

Most importantly, Li now disputes that he has foreign ties to Mexico or engaged in ongoing criminal activity after the January 28 raid of his home and a stash house and the arrest of alleged co-conspirators. Mot. for Reconsideration at 12-15.

As to foreign ties, the government proffered at the reconsideration hearing that it had records of chat messages between Li and suppliers based in Mexico. Draft Hr'g Tr. 42:6-14. However, it downplayed reliance on any Mexico ties, id. at 11:6-10, and was unable to provide more specifics as to how it knew that Li's interlocutors were based in Mexico (or indeed abroad). For his part, Li pointed out that all his text messages were in English and reasserted that he has not traveled to Mexico and does not speak Spanish. Id. at 36:10-19. Recall also that Li has lived in the L.A. county area since the age of two. Pretrial Services reported that Li has not traveled abroad at all in two years, Pretrial Servs. Report at 5, Dkt. 89, and Li has surrendered his passport, Mot. for Reconsideration at 92 (Ex. C: Passport Receipt). The lack of showing as to foreign ties mitigates the background congressional concern that drug traffickers are at heightened risk of flight in part because they "often have established substantial ties outside the United States." United States v. Alatishe, 768 F.2d 364, 370 n.13 (D.C. Cir. 1985) (quoting S. Rep. No. 98-225, at 20 (1983)). And the government all but conceded in the reconsideration hearing that it is no longer seeking detention based on flight risk.[2] Draft Hr'g Tr. 42:14-17. Accordingly, the Court now

---

[2] In fact, the government made a similar concession at the original detention hearing in California. Mot. for Reconsideration at 63:21 (Ex. A: Detention Hearing Transcript). Despite defense counsel's representation when opposing the government's appeal that he recalled the government making such a concession, this Court could not

finds that the government has failed to carry its burden to show flight risk by a preponderance of the evidence.

Regarding ongoing criminal activity, the government offered two arguments: first, that Li engaged in money laundering in the hours immediately after the January 28 raids and arrests by transferring funds out of two cryptocurrency wallets, and second, that he continued to supply a "dropshipper"—a retailer who does not hold inventory and who connects Li's alleged wholesale drug distribution operation to end users—well after January 28.

The government seeks to substantiate its first theory by pointing out that the only two people that the government knows had access to the cryptocurrency private keys necessary to move the funds were Li and a co-conspirator who was in police custody at the time of the transfers. Id. at 26:5-15. But at the reconsideration hearing the government conceded that it "do[es]n't know what [it] do[es]n't know," id. at 43:5, namely, whether anyone else had access to the private keys. The government suggests that the Court can infer that nobody else had access by relying on its evidence that only two members of the conspiracy would instruct clients where to send payments: Li and the co-conspirator who was in custody when the alleged post-raid laundering occurred. Id. at 40:3-5. But that does not amount to clear and convincing evidence that only Li and the co-conspirator had access to the cryptocurrency keys or that Li moved the money. It remains uncertain whether Li was involved in the transfers of funds.

In support of its second theory, the government highlights that a dropshipper does not carry inventory and that the dropshipper in question continued to advertise to end customers by using an image that he received from Li for marketing purposes. Id. at 27:1-14, 30:3-7. But the dropshipper

---

verify that fact without the transcript, and the government initially walked back that concession before this Court. See Mem. Op. at 4.

could have been using an old picture for the sake of convenience and branding while providing customers with drugs from a new supplier.

To reinforce its argument, the government submitted supplemental evidence after the hearing about two undercover buys from the dropshipper in early May 2026—over three months after the raids and arrests—for products that the drug trafficking organization had been selling. Gov't's Suppl. Evid., Dkt. 103.  The government highlights that, shortly after the undercover agent sent cryptocurrency to the dropshipper's wallet, funds were transferred to wallets associated with the drug ring in amounts consistent with the ring's wholesale pricing.  Id. at 1-3.  Indeed, that suggests that the trafficking apparatus was operating at least in part after the raids and arrests (although the government does not say that the drugs were in fact delivered).  However, the evidence does not speak to Li's role in those transactions.  See Def.'s Resp. at 3, Dkt. 105.[3]  And as Li points out, drug trafficking organizations often continue to operate without their leaders.  Id. at 2-3.  To be sure, a defendant must withdraw from a conspiracy to avoid criminal liability for later acts of co-conspirators.  See, e.g., Smith v. United States, 568 U.S. 106, 111 (2013).  But it is another question whether a defendant remains an active participant in a conspiracy and therefore an ongoing danger to the community as part of the individualized assessment required under the Bail Reform Act.  Ultimately, the government's inference that Li continued to be involved in post-January 28 drug trafficking is possible, but it does not surpass the bar of clear and convincing evidence.

All that said, the government did present extensive evidence relating to guilt: surveillance footage of Li at the stash house, seized drugs, mail addressed to Li found at the stash house,

---

[3] The government's supplemental evidence actually shows only that the dropshipper sent funds to the drug trafficking organization to accomplish the undercover agent's purchase, but not that the drug trafficking organization, much less Li, then sent drugs to the agent.

messaging exchanges connecting Li to the drug trafficking scheme and referring to him as employing the other co-conspirators, and financial tracing of cryptocurrency that Li controlled. E.g., Draft Hr'g Tr. at 11:20-22:24.  Li did not meaningfully contest that evidence for purposes of the reconsideration hearing, although he pointed out that he had been requesting such evidence from the government for some time and had received it only minutes before the hearing.  In any event, the weight of the evidence "is the least important" Bail Reform Act factor.  United States v. Padilla, 538 F. Supp. 3d 32, 43 (D.D.C. 2021) (quotation omitted).

* * *

Returning to the Bail Reform Act factors[4] and giving some weight to the background presumption of detention for serious drug offenses alongside those factors, the Court concludes that Li should be released.

As to the nature and circumstances of the offense, the Court maintains its view that these crimes—conspiracy to distribute large quantities of drugs and money laundering—are serious. Indeed, Li is accused of being at least a leader of this drug trafficking operation, if not the leader,[5] and the government has proffered considerable evidence in support of the charges.  On the other hand, the Court now finds that Li has rebutted the government's initial proffer as to continued criminal activity after January 28 and the government has subsequently failed to carry its burden of persuasion on that issue.  Equally, the Court now finds that Li has carried his burden of

---

[4] These are: (1) "the nature and circumstances of the offense," (2) "the weight of the evidence," (3) "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings," and (4) the "nature and seriousness of the danger to any person or the community [from] release."  18 U.S.C. § 3142(g).

[5] Li makes much of this distinction, see Mot. for Reconsideration at 11-12, but the Court does not find the difference to be significant.  For example, he would be eligible for a leadership role sentencing enhancement in either event.  See U.S.S.G. § 3B1.1(a) ("[A]n organizer or leader.").  And there is no evidence so far before the Court to suggest Li reported to a superior.

10

production and the government has failed to meet its burden of persuasion as to Li's foreign ties to Mexican drug suppliers. Accordingly, the Court finds that the nature and circumstances of the offense still weigh in favor of detention, but less strongly than before.

The government's failure to carry its burden of persuasion on the issue of ongoing criminal activity undercuts the Court's previous finding as to danger to the community from pretrial release. If Li ceased all criminal conduct once he was aware of being under investigation—and indeed offered himself up for surrender as he claims—he is less likely to recidivate on pretrial release. The Court also finds significant that there has been no indication so far of a lack of candor either before the Court or with Pretrial Services or law enforcement, nor any indication of the use of firearms or other violence in these crimes. The Court now finds that this factor weighs in favor of release.

As to his history and characteristics, Li has now offered evidence of longstanding and deep community and family ties to the L.A. area and few ties abroad, mitigating the Court's concerns both about flight risk and recidivism. Li also has a very limited and dated criminal history, without any convictions. That said, the Court still has reservations about the legitimacy of Li's employment and the possibility of using financial resources from this scheme to effect flight. But on balance, the Court now finds that this factor substantially favors release, however with the added condition of home detention.

Finally, the government has proffered considerable evidence of guilt, but its late disclosure of that evidence did not give Li a meaningful chance at rebuttal. Therefore, this factor—which is the least important—weighs somewhat in favor of detention.

Accordingly, upon consideration of [86] defendant's motion for reconsideration and the entire record herein, it is hereby **ORDERED** that the motion is **GRANTED**, and it is further

**ORDERED** that defendant shall abide by all previously imposed conditions of release with the added condition of home detention. **SO ORDERED**.

/s/
_____
JOHN D. BATES
United States District Judge

Date: <u>July 31, 2026</u>